Submitted on record and briefs December 20, 1994, reversed and remanded on petition; affirmed on cross-petition January 18, 1995

Jerry H. DERRY
and Paul W. Tamm,
*Respondents - Cross-Petitioners,*

*v.*

DOUGLAS COUNTY,
*Petitioner - Cross-Respondent,*

*and*

Steven BUSCH,
*Intervenor-Respondent below.*

(LUBA 94-109; CA A86376)

888 P2d 588

Paul E. Meyer, Assistant County Counsel, filed the briefs for petitioner - cross-respondent.

Jerry H. Derry and Paul W. Tamm filed the brief *pro sese.*

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Douglas County seeks review of LUBA's remand of the county's decision that the applicant Busch's proposal to raise pigs in a confined area is a use that is permitted outright in the exclusive farm use zone. Respondents, who oppose the application, cross-petition. We reverse on the petition and affirm on the cross-petition.

The county planning commission granted the application, based on its interpretation that the proposed use did not involve a "feedlot," as defined in the county zoning ordinance, and therefore did not require approval as a conditional use. Respondents appealed the decision to the board of county commissioners—the governing body. With one member abstaining, the two remaining board members were divided on the question of whether the application should be granted. However, the board construed a procedural section of the zoning ordinance as providing that the tie vote effected an affirmance of the planning commission's decision.[1] Consequently, as explained by LUBA, the "board of commissioner[s'] decision appends the planning commission decision as the county's decision on the merits of the proposal."

Respondents appealed to LUBA. LUBA concluded that the governing body's interpretation of its ordinance to provide that a tie vote affirms the planning commission was entitled to deference under *Gage v. City of Portland*, 319 Or 308, 877 P2d 1187 (1994), and *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992). LUBA accorded that deference and sustained that aspect of the county's decision. However, LUBA then concluded that, because it regarded the interpretation of "feedlot" to be the planning commission's rather than the governing body's, *Gage* did not allow LUBA to defer to that interpretation. LUBA then interpreted the relevant ordinance provision independently, disagreed with the county's interpretation of the term and remanded the decision.

---

[1] The local provision, section 2.700.6 of the zoning ordinance, requires that the votes of at least two of the three board members are required to alter a planning commission decision. As applied here, the board construed that section as allowing the commission decision to stand by force of the tie vote at the board level. We will describe that interpretation in those terms in our discussion.

■ In their cross-petition, respondents contend that LUBA erred by sustaining the governing body's interpretation that the effect of its tie vote was to affirm the planning commission. We address the cross-petition first, because it affects our disposition of the petition.

We agree with LUBA that the county's interpretation of its ordinance relating to what happens when a tie vote occurs must be affirmed under *Clark* and ORS 197.829. Respondents argue that the county's interpretation "switches the burden of proof" on the merits of the application away from the applicant in a way that offends constitutional or other principles. However, respondents' argument confuses the burden of proof, which the applicant presumably carried before the planning commission, with the mechanics of the local appeal procedure. The board's *de novo* appellate review was limited to the evidence in the planning commission record. The county procedure, as construed by the governing body, simply defines what is necessary in order for the board to reverse the commission. Assuming, without deciding, that the county was required to place the burden on the applicant in the planning commission proceeding, respondents do not persuade us that burden of proof or any other procedural requirements are inconsistent with a provision that a majority vote by a reviewing body is necessary to reverse a lower body's earlier adjudicative decision. We reject the cross-petition, and turn to the petition.

■ In its first assignment, the county argues that LUBA erred by concluding that it was not required to defer to the *planning commission's* interpretation of "feedlot." The county acknowledges that *Gage* requires deference to be accorded to interpretations of local land use legislation by local governing bodies, but does not allow deference to be given to those of local hearings officers. The county contends, however, that the planning commission is more akin to a governing body than to a hearings officer. It maintains that "[t]his [case] falls right down the middle between the board of commissioners in *Clark* and the hearings officer in *Gage*."

This case does not fall precisely within the facts of *Clark* or *Gage*. However, after considering the court's rationale in *Gage*, we conclude that a planning commission's interpretation is not entitled to deference. The court in *Gage* explained:

"Based on the foregoing authorities, it is apparent that there are two fundamental principles behind the rule of deference announced by this court in *Clark*. First, deference is due a local governing body's interpretation of its own ordinance, because that governing body is composed of the politically accountable representatives elected by the community affected by the ordinance. Second, and perhaps more important, deference is due a local governing body's interpretation of its own ordinance, because that governing body is the legislative body responsible for enacting the ordinance and may be assumed to have a better understanding than LUBA or the courts of the intended meaning of the ordinance.

"When this court's decision in *Clark* is viewed in the light of those fundamental principles, it becomes evident that the reasons for requiring deference to a local government's interpretation of its own ordinance do not apply when the interpretation is that of a hearings officer. As petitioners aptly pointed out in their arguments before LUBA, 'a policy of interpretive deference to a city council or county commission when it is interpreting "its own ordinance" has little meaning in the context of an interpretation by a hearings officer, a relatively independent administrative law judge without policy-making, legislative or enforcement authority.' Because a hearings officer is not a member of the popularly elected governing body, such a person is neither politically accountable to the community nor an integral part of the legislative process by which local land use ordinances are enacted. Accordingly, we hold that an interpretation of a local land use ordinance by a hearings officer is not subject to the deference required by this court's decision in *Clark*." (Footnote omitted.) 319 Or at 316-17.

Although members of the planning commission are appointed by the county board of commissioners and have some measure of accountability to the board, they are not popularly elected. In addition, although the planning commission may participate in a significant way in the development and preparations for adoption of land use ordinances, it does not have the authority to adopt such ordinances. Consequently, applying the rationale expressed in *Gage*, we conclude that where the planning commission's interpretation is the final one rendered by the local government, it is not entitled to deference.

■        The county contends in its next assignment that, even without the benefit of a deferential review standard, the planning commission's interpretation of "feedlot" was correct and LUBA erred by rejecting it. We do not reach that argument, however, because we do not agree with LUBA that the authoritative interpretation of "feedlot" was that of the planning commission rather than of the governing body, for purposes of determining whether *Gage* applies. The correct analysis, in our view, is as follows: The governing body's one-to-one vote had the effect of affirming the planning commission's interpretation, and the commission's decision was incorporated into the board's order as the county's final decision; by affirming and incorporating the commission's order, the board adopted, as its own, the commission's interpretation of the term; therefore, *Gage* applies and LUBA and we are required to give deference to the interpretation.

        It is immaterial that the governing body's vote on the merits was tied. Under the county's rule, the vote favoring affirmance of the planning commission prevails. The interpretation of the term "feedlot" was an indispensable part of the decision on the application. Accordingly, the interpretation of "feedlot" in the commission's decision must be deemed part of the prevailing vote at the board level and, therefore, part of the board's order affirming the planning commission's decision.

        In the usual situation where a local governing body unanimously or by majority vote affirms or adopts a subordinate body's decision, we understand the correct application of *Gage* to be that any interpretation that the lower body rendered in its decision and that was necessary to the decision is to be regarded as having obtained governing body approval, whether or not the governing body's own order *expressly* adopts or reiterates the interpretation. The logic of *Gage* is that an interpretation of local legislation is entitled to deference if the governing body indicates that it subscribes to the interpretation. However, it is not necessary that the governing body expressly state or replicate an essential interpretation that originates in the order of a lower local entity which the governing body affirms. The lower body's interpretation is presumptively accepted along with its decision. To hold otherwise would foster endless possibilities of gamesmanship

among the participants in local land use proceedings, designed to obtain or avoid a particular standard of LUBA and judicial review.

■ We hold that, unless the governing body expressly changes an interpretation by a lower body in affirming that body's decision, the interpretation of the local provision in the lower body's decision will be treated as the governing body's for purposes of *Clark* and *Gage*. We do not imply, however, that a governing body may not reject a lower body's interpretation and replace it with its own, but nevertheless affirm the inferior body's decision on other grounds. In such a case, the governing body's independent interpretation supplants the lower body's as the one to which the deference extends. However, that is not what happened here.

■ This situation does not differ from the usual one. Although the board vote on the merits was a tie, for the reasons we have stated, the legal effect of the board's order is no different than if the vote had been unanimous. We conclude that the *Clark-Gage* standard applies to the county's interpretation of "feedlot" and that LUBA exceeded its authority by reviewing the interpretation without adhering to the limits of that standard. We further conclude that the county's interpretation of "feedlot" is not clearly wrong, *Goose Hollow Foothills League v. City of Portland*, 117 Or App 211, 217, 843 P2d 992 (1992), and is not reversible.

The question that remains is the appropriate disposition. In the second footnote to its opinion, LUBA suggests that a question other than the ones it and we have considered was unresolved at the local level, and that the parties agreed that LUBA should remand if it sustained respondents' assignment of error. It did sustain the assignment, but we have concluded it erred in so doing. We are unable to tell where that leaves the unresolved question. Accordingly, we remand the case to LUBA. If the unresolved question remains relevant, LUBA should take appropriate dispositional action. If that question does not remain potentially decisive of the case in the light of our opinion, LUBA should affirm the county's decision.

Reversed and remanded on petition; affirmed on cross-petition.